UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VDF FUTURECEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JOSEPH A. LEWIS II; | ) | Case No. 1:13-cv-00407 |
| J&J TECHNOLOGIES, LC; and | ) | |
| STIEFEL LABORATORIES, INC; | ) | Judge John W. Darrah |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff VDF FutureCeuticals, Inc. filed a Complaint against Defendants Joseph A. Lewis II ("Lewis"); J&J Technologies, LC ("J&J"); and Stiefel Laboratories, Inc. ("Stiefel"), on December 14, 2012, in the Circuit Court of Cook County, Illinois. Plaintiff alleges eight claims against Defendants: (I) breach of contract and the duty of good faith and fair dealing against J&J; (II) alter ego liability against Lewis for breach of contract by J&J; (III) alter ego liability against Stiefel for breach of contract by J&J; (IV) unjust enrichment against Lewis; (V) conversion against Lewis; (VI) breach of fiduciary duty against Lewis; (VII) tortious interference with a contract against Stiefel; and (VIII) conspiracy to tortiously interfere with a contract against Lewis, J&J, and Stiefel.

J&J and Stiefel removed the case to this District on January 17, 2013. Removal is appropriate pursuant to 28 U.S.C. § 1441, as complete diversity exists between the parties and the amount in controversy exceeds $75,000.00.

Lewis moves to dismiss Counts II, IV, V, VI, and VIII of the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Motion has been fully briefed.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Plaintiff and J&J entered into a Purchase and Exclusive CoffeeBerry License Agreement ("License Agreement") on September 27, 2004, granting J&J an exclusive license to commercialize Plaintiff's intellectual property rights in the CoffeeBerry product. (Compl. ¶ 1.) Lewis owned and controlled J&J and signed the License Agreement on J&J's behalf. (*Id.* ¶¶ 15-16.) Lewis marketed himself as a leading expert in the cosmeceuticals industry and made representations Plaintiff relied upon in entering into the License Agreement. (*Id.* ¶¶ 17-18.) Lewis formed J&J on or about July 30, 2004, for the express purpose of J&J entering into the License Agreement with Plaintiff; J&J conducted no other business prior to or subsequent to entering into the License Agreement. (*Id.* ¶¶ 19-23.) J&J did not observe corporate formalities; its only material asset was the License Agreement, and Lewis was J&J's only employee at all times prior to July 2010. (*Id.* ¶¶ 22-23.)

The License Agreement required J&J to pay royalties to Plaintiff in the amount of one-third of J&J's sales revenue of CoffeeBerry products or, alternatively, a minimum royalty payment and one-third of any other payments J&J received pursuant to the terms of the License Agreement. (*Id.* ¶¶ 28-29.) Although the License Agreement permitted J&J to sublicense its rights under the License Agreement in "the exercise of its best judgment," J&J was not allowed to assign or transfer the License Agreement or J&J's rights without Plaintiff's written consent and approval. (*Id.* ¶ 30.)

On May 5, 2006, J&J sublicensed certain of its rights in the License Agreement to Stiefel ("Stiefel Sublicense"), granting Stiefel the right to commercialize CoffeeBerry products and

requiring Stiefel to pay royalties to J&J.  (*Id.* ¶¶ 33-36.)  Then, in or around July 2010, Stiefel purchased J&J's membership interests for approximately $9 million ("Stiefel Transaction"), which J&J paid to Lewis.  (*Id.* ¶ 44.)  J&J agreed to relieve Stiefel of its financial obligations to J&J under the Stiefel Sublicense.  (*Id.* ¶¶ 44, 46.)  The money from the Stiefel Transaction was directly paid to and solely retained by Lewis, not J&J; none of the $9 million was shared with Plaintiff, though the payment constituted a royalty or other contractual payment under the License Agreement.  (*Id.* ¶¶ 44, 60-61, 73-74.)

Following the Stiefel Transaction, J&J discontinued its business operations altogether, and Lewis stopped working for J&J.  (*Id.* ¶¶ 49-50.)  Stiefel thereafter assumed all communications with Plaintiff on behalf of J&J.  (*Id.* ¶¶ 49-56.)  Furthermore, while J&J ceased paying Plaintiff the royalties and other contract payments due to Plaintiff under the License Agreement, Stiefel's parent company, GSK, instead began making such payments to Plaintiff, even though neither GSK nor Stiefel were parties to the License Agreement.  (*Id.* ¶ 57.)  Thus, the Stiefel Transaction amounted to a transfer or assignment of J&J's rights under the License Agreement to Stiefel, which constituted a breach of the License Agreement.  (*Id.* ¶ 59.)  In September 2010, J&J and Stiefel amended the Stiefel Sublicense ("Stiefel Amendment") to reduce J&J's minimum royalties from Stiefel under the Stiefel Sublicense from $500,000 to $150,000 per quarter, which in turn reduced Plaintiff's royalties from J&J under the License Agreement.  (*Id.* ¶¶ 63, 69.)

Plaintiff alleges five counts against Lewis, specifically:  alter ego liability based on J&J's breach of the License Agreement (Count II); unjust enrichment and conversion based on retention of the money from the Stiefel Transaction (Counts IV and V, respectively); and breach of fiduciary duty and conspiracy to tortiously interfere with a contract based on Lewis's

3

engagement in the Stiefel Transaction and the Stiefel Amendment (Counts VI and VIII, respectively).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to raise the defense that the plaintiff failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss under Rule 12(b)(6), all factual allegations in the complaint are taken as true, and all reasonable inferences are drawn in favor of the plaintiff. *White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 985 (7th Cir. 2013) (citation omitted). This principle, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must contain factual allegations that satisfy a threshold of facial plausibility, allowing the court to draw a reasonable inference that the defendant is in fact liable for the misconduct alleged by the plaintiff. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)).

## ANALYSIS

The parties do not dispute that Illinois law applies to this discussion. In diversity cases, a district court will consult the substantive law of the state in which the district court sits. *Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). However, procedural matters, such as pleading requirements, are governed by federal rules. *Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997) (citations omitted).

### *Count II: Breach of Contract – Alter Ego Liability*

Plaintiff identifies J&J as Lewis's alter ego and claims J&J's corporate veil should be pierced to hold Lewis liable for J&J's breach of the License Agreement. A claim of alter ego

4

liability can only provide an equitable remedy because the doctrine of piercing the corporate veil is not, in itself, a cause of action but, rather, a means of imposing liability for an underlying cause of action, such as a breach of contract. *Laborers' Pension Fund v. Lake City Janitorial, Inc.*, 758 F. Supp. 2d 607, 618 (N.D. Ill. 2010) (citation omitted). Plaintiff alleges J&J and Lewis were indistinguishable due to Lewis's ownership of and complete control over J&J. (Compl. ¶¶ 15-16, 22.) Therefore, the claim that J&J breached the License Agreement may be asserted against Lewis because a court may pierce the corporate veil when an individual uses a corporation as a mere instrumentality to conduct his own business. *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009) (quoting *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 775-76 (Ill. App. Ct. 2005)).

Under Illinois law, a court will pierce the corporate veil when two prongs are met: (1) there exists a unity of interest and ownership between the corporation and the individual such that the "separate personalities . . . no longer exist"; and (2) maintaining the fiction of "separate corporate existence would sanction a fraud or promote injustice." *Wachovia*, 674 F.3d at 751-52 (quoting *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994)). Here, Lewis presents three bases to dismiss the alter ego claim: (1) Plaintiff fails to plead a unity of interest between J&J and Lewis; (2) Plaintiff fails to plead fraud or injustice; and (3) Plaintiff fails to plead breach of the License Agreement by J&J.

Unity of Interest Between J&J and Lewis

Lewis argues the Complaint contains only conclusory allegations of a unity of interest between J&J and Lewis that lack factual support. (Def.'s Mem. at 4.) Factors considered in determining the existence of a unity of interest includes: inadequate capitalization, failure to observe corporate formalities, failure to issue stock or pay dividends, missing corporate records,

commingling funds, diverting assets to an owner to creditor detriment, and whether the corporation is a mere facade for a dominant owner. *Wachovia*, 674 F.3d at 752 (citing *Fontana*, 298 Ill. Dec. 654, 840 N.E.2d at 778).

Within the Complaint, Plaintiff alleges enough facts to establish a claim that a unity of interest between Lewis and J&J exists. Lewis created J&J a mere two months before J&J entered into the License Agreement with Plaintiff and Lewis allegedly formed J&J for the express purpose of entering into the License Agreement, and Lewis himself conducted negotiations with Plaintiff himself over the terms of the License Agreement. (Compl. ¶¶ 16, 19-20.) Once Lewis formed J&J, not only was he the owner, sole employee, and sole decision-maker of J&J, but J&J had no other business engagements besides the License Agreement between its inception in July 2004 until its acquisition by Stiefel in July 2010. (*Id.* ¶¶ 15-16, 19-24.) According to the Complaint, Lewis diverted the $9 million from the Stiefel Transaction to himself and began obtaining licensing revenue from Stiefel rightfully owed to J&J under the Stiefel Sublicense; yet, J&J made no attempt to enforce its rights to royalties from the Stiefel Transaction and the Stiefel Sublicense. (*Id.* ¶¶ 44, 48, 74.) Additionally, J&J was never adequately capitalized and did not observe standard corporate formalities. (*Id.* ¶ 22.)

Plaintiff's factual allegations are facially plausible to support a claim that a unity of interest exists between J&J and Lewis. Lewis contends Plaintiff fails to fully flesh out a unity of interest because Plaintiff does not allege the commingling of funds or J&J's failure to issue stock or pay dividends. (Def.'s Mem. at 4-5.) This argument is unavailing, as "[p]laintiffs need not allege with particularity that each of the laundry list of factors relevant to show a unity of interest is present." *Lake City Janitorial*, 758 F. Supp. 2d at 619. Thus, Plaintiff has sufficiently pled the unity of interest prong for an alter ego claim.

Promotion of Fraud or Injustice

The second prong necessary for piercing a corporate veil is demonstrating the existence of circumstances such that adherence to the fiction of separate entities would promote fraud, injustice, or unfairness. *Fontana*, 298 Ill. Dec. 654, 840 N.E.2d at 781-82 (citations omitted). Lewis maintains the pleading of the second prong of fraud or injustice must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). (Def.'s Mem. at 5.) Rule 9(b) requires a plaintiff bringing a claim for fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). While formal claims of fraud will necessarily implicate Rule 9(b), factual allegations sounding in fraud or implicating a course of fraudulent conduct will also invoke Rule 9(b)'s heightened pleading standard. *Bank of America, N.A. v. Knight*, 875 F. Supp. 2d 837, 850-851 (N.D. Ill. 2012) (quoting *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)).

Plaintiff asserts that both the Stiefel Transaction and the Stiefel Amendment violate the License Agreement and that both resulted in lost monies owed to Plaintiff under the License Agreement. The Complaint presents sufficient facts concerning these occurrences to state a claim. *See Flentye v. Kathrein*, 485 F. Supp. 2d 903, 913 (N.D. Ill. 2007) (citation omitted) ("To state a veil-piercing claim, Plaintiffs typically are only required to satisfy the notice pleading standards of Rule 8(a).").

The parties disagree as to whether the heightened pleading standard of Rule 9(b) applies here. Even applying a heightened pleading standard, Plaintiff has met its burden. Pleading under Rule 9(b) requires a complaint to provide "the who, what, when, where and how" of the alleged fraud. *Bank of America*, 875 F. Supp. 2d at 850 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Here, Plaintiff meets that level of specificity by providing a

7

detailed account of who engaged in the Stiefel Transaction and the Stiefel Amendment, what happened leading into and resulting from those occurrences, the dates those events occurred, and even allegations of how and why the Stiefel Transaction and the Stiefel Amendment transpired. The second prong for alter ego liability is sufficiently pled.

### Breach of Contract by J&J

Lewis finally argues the alter ego claim fails because J&J did not breach the License Agreement by entering into the Stiefel Transaction or by failing to enforce its rights to the proceeds from the Stiefel Transaction. (Def.'s Mem. at 6-7.) In particular, Lewis asserts that by the terms of the License Agreement, there was nothing prohibiting Lewis from selling his interest in J&J. (*Id.*)

Attempting to contradict Plaintiff's version of the facts is "in direct contravention of the purpose of a motion to dismiss" so in this discussion, "[D]efendant is not permitted to contradict [Plaintiff's] factual allegations." *Leslie v. Bd. of Educ. for Ill. Sch. Dist. U-46*, 379 F. Supp. 2d 952, 961 (N.D. Ill. 2005). In Count I of the Complaint, Plaintiff submitted factual allegations to support its claim of J&J's breach of the License Agreement, detailing: J&J's involvement in the Stiefel Transaction and the Stiefel Amendment, J&J's termination of its business operations after the Stiefel Transaction, and J&J's failure to collect and pay royalties due to Plaintiff under the License Agreement. (Compl. ¶ 107.) This version of the facts is sufficient to state the underlying claim for breach of contract by J&J so as to allege alter ego liability against Lewis.

Lewis's Motion to Dismiss is denied as to Count II of the Complaint for alter ego liability based on the breach of contract.

*Count IV: Unjust Enrichment*

Plaintiff alleges a claim of unjust enrichment against Lewis, based on his retention of the proceeds from the Stiefel Transaction, when the funds should have gone to J&J and on to Plaintiff under the License Agreement. (Compl. ¶¶ 126-34.) Unjust enrichment is a quasi-contract theory under which a plaintiff may recover damages in the absence of an enforceable contract to prevent unjust results. *See Prudential Ins. Co. of America v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008); *Hayes Mech., Inc. v. First Indus., LP*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004). Pleading a claim for unjust enrichment requires Plaintiff to "allege that the defendant retained a benefit to the plaintiff's detriment, and that the retention of that benefit violates fundamental principles of justice, equity, and good conscience." *Prudential*, 548 F. Supp. 2d at 622 (citation omitted).

However, because the License Agreement governs the relationship between Plaintiff and J&J – and Lewis is indistinguishable from J&J as its alter ego[1] – Plaintiff may not claim unjust enrichment unless the grounds for the claim fall outside the subject matter of the License Agreement. *Utility Audit, Inc. v. Horace Mann Service Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004) (citations omitted); *see also Gagnon v. Schickel*, 983 N.E.2d 1044, 1052 (Ill. App. Ct. 2012) ("[A]lthough a plaintiff may plead claims alternatively based on express contract and an unjust enrichment, the unjust enrichment claim cannot include allegations of an express

---

[1] Claiming alter ego liability against an individual for breach of contract by a corporate entity still implicates the mutual exclusivity of an unjust-enrichment claim against that individual with the breach of contract claim. If there exists an enforceable contract and alter ego liability is proper against an individual for breach of contract, then this would preclude recovery for unjust enrichment against the individual. Thus, it does not matter that Lewis was not, himself, a party to the License Agreement with Plaintiff. *See Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 84603, at *6 (N.D. Ill. Jan. 22, 2002) (citations omitted).

contract."). Under Fed. R. Civ. P. 8(d)(2), Plaintiff may allege the inconsistent claims of breach of contract and unjust enrichment simultaneously if they are pled in the alternative. *See Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1016 (N.D. Ill. 2009). To plead claims in the alternative simply requires wording claims in a manner from which it can be reasonably inferred that the plaintiff seeks to plead in the alternative. *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000).

Plaintiff not only fails to meet the standard for pleading in the alternative but also includes direct references to previous allegations about the License Agreement. Plaintiff does not include the word "alternative" or "either-or" or "if-then" language in Count II. *See id.* Even if Plaintiff properly pled the unjust enrichment claim in the alternative, the claim is based on royalties owed *under the License Agreement* and incorporates factual allegations expressly describing the existence of a contract, i.e., the License Agreement. (Compl. ¶¶ 126, 130-33.)

Plaintiff fails to state a claim for unjust enrichment; thus Lewis's Motion to Dismiss is granted as to Count IV. Lewis asserts the unjust enrichment claim must be dismissed with prejudice because the terms of the License Agreement negate a finding of unjust enrichment. The notice pleading standard for filing complaints in federal court, however, is not meant as a "game of skill" but, rather, its purpose "is to facilitate a proper decision on the merits." *Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 777-78 (N.D. Ill. 2006) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).

Accordingly, the unjust enrichment claim is dismissed without prejudice, and Plaintiff may amend its Complaint to properly plead its unjust enrichment claim in the alternative.

*Count V: Conversion*

The facts alleged in the unjust enrichment claim also underlie Plaintiff's claim for conversion: Lewis's improper receipt and retention of the payment from the Stiefel Transaction,

10

which should have been paid to Plaintiff. (Compl. ¶¶ 138-41.) To state a claim for conversion under Illinois law, Plaintiff must allege: (1) a right to the converted property; (2) an absolute and unconditional right to immediate possession of the property; (3) a demand for possession was made; and (4) the defendant wrongfully assumed control, dominion, or ownership over the property. *Gates v. Towery*, 435 F. Supp. 2d 794, 800 (N.D. Ill. 2006) (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)).

Lewis challenges Plaintiff's ability to allege each element for conversion. More specifically, Lewis argues Plaintiff fails to meet the requirements for a conversion claim in which money is the subject. (Def.'s Mem. at 9.) Indeed, although money may be at the center of a conversion claim, the money at issue must be characterized as specific chattel or specific money and must be computable in a determinate amount. *Sutherland v. O'Malley*, 882 F.2d 1196, 1200 (7th Cir. 1989); *Fonda v. Gen. Cas. Co. of Ill.*, 665 N.E.2d 439, 442 (Ill. App. Ct. 1996). The claimed money need only be a specific, identifiable fund, not specifically earmarked. *Gates*, 435 F. Supp. 2d at 801 (citing *In re: Thebus*, 483 N.E.2d 1258, 1262 (Ill. 1985)).

Plaintiff adequately pled facts to support each element of conversion, including the particular requirements for conversion of money. The claim specifies the $9 million Stiefel paid to Lewis, of which Plaintiff is unconditionally entitled to one-third share under the License Agreement. (Compl. ¶¶ 138-41.) Furthermore, the License Agreement was described throughout the Complaint as a binding contract between Plaintiff and J&J, and the nature of the License Agreement cemented Plaintiff's claimed right to demand from Lewis its share of the $9 million Stiefel payment. (*Id.* ¶¶ 15-32, 60-61, 139-42.)

Lewis's Motion to Dismiss is denied as to Count V of the Complaint for conversion.

*Count VI: Breach of Fiduciary Duty*

Plaintiff asserts Lewis became a fiduciary of Plaintiff through the role Lewis played in the negotiation and formation of the License Agreement between Plaintiff and J&J. (*Id.* ¶¶ 145-46.) As the head of J&J, Lewis was granted significant power and discretion over Plaintiff's intellectual property pertaining to cosmeceutical business opportunities, thus owing Plaintiff fiduciary duties that Lewis allegedly breached to the detriment of Plaintiff. (*Id.* ¶¶ 147-54.)

Under Illinois law, to state a claim for breach of fiduciary duty, Plaintiff must allege: "(1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damages proximately resulting from that breach." *United States v. Cancer Treatment Centers of America*, 350 F. Supp. 2d 765, 771 (N.D. Ill. 2004) (quoting *Zurich Capital Markets, Inc. v. Coglianese*, 332 F. Supp. 2d 1087, 1120 (N.D. Ill. 2004)). There are circumstances where courts recognize a fiduciary duty between parties based on the special nature of their relationship, "where one party places trust in another so that the latter gains superiority and influence over the former." *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 769 (N.D. Ill. 2011) (quoting *Crichton v. Golden Rule Ins. Co.*, 832 N.E.2d 843, 854 (Ill. App. Ct. 2005)).

Plaintiff emphasizes throughout the Complaint, and especially in Count VI, the nature of the relationship between Plaintiff and Lewis. Lewis was a well-known, reputable leader in the cosmeceuticals industry and marketed himself to Plaintiff as such, consequently gaining Plaintiff's trust and confidence in many areas – development, marketing, and sales in the cosmeceuticals industry – in which Plaintiff lacked any material experience. (Compl. ¶¶ 14, 17-18, 145-47.) Lewis's expertise persuaded Plaintiff to enter into a contract for the CoffeeBerry products; Plaintiff "entered into the License Agreement with J&J in reliance on Lewis' representations that he would be [Plaintiff's] business partner . . . and, in entering into the

License Agreement, [Plaintiff] gave Lewis complete control over [Plaintiff's] IP." (*Id.* ¶ 18.) Coupled with Lewis's exclusive license to Plaintiff's intellectual property and significant power over Plaintiff's business processes, the Complaint alleges sufficient factual allegations to state the existence of a fiduciary duty based on trust and dominance or superiority. (*Id.* ¶¶ 26, 147.)

Additionally, Plaintiff pleads factual allegations that establish a sufficient plausibility of the existence of breaches of fiduciary duty by Lewis and the resulting damages from such breaches. Plaintiff summarizes in Count VI the duties owed by Lewis as a fiduciary to Plaintiff, including "the duty of good faith, the duty of loyalty, the duty not to act at his own interest at the expense of [Plaintiff], and the duty to act in the best interest of [Plaintiff]." (*Id.* ¶ 152.) As to these duties, Lewis failed as a fiduciary with regards to his alleged participation in the Stiefel Transaction and the Stiefel Amendment, thus causing identifiable, specific damages to Plaintiff. (*Id.* ¶ 153-54.) In considering the sufficiency of the facts alleged as to the foregoing alter ego and conversion claims, Plaintiff has asserted sufficient factual allegations to state a claim for breach of fiduciary duty.

Lewis's Motion to Dismiss is denied as to Count VI for breach of fiduciary duty.

*Count VIII: Conspiracy to Tortiously Interfere with a Contract*

Plaintiff alleges Lewis, J&J, and Stiefel conspired[2] to tortiously interfere with and cause a breach of the License Agreement between Plaintiff and J&J. The thrust of the claim is the purported agreement between Stiefel and Lewis to engage in the Stiefel Transaction, an agreement in which Stiefel acted in furtherance of, by tortiously interfering with, the License Agreement so as to cause J&J to breach the License Agreement.

---

[2] Count VIII also alleges J&J and Stiefel conspired to tortiously interfere with a contract.

To establish a cause of action for conspiracy under Illinois law, Plaintiff must allege the existence of "an agreement and a tortious act committed in furtherance of that agreement." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 257-58 (Ill. 1999)). The commission of a tort by a party to and in advancement of the agreement is "the gist of a civil conspiracy claim." *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 960 (N.D. Ill. 2002) (citations and quotations omitted).

Plaintiff alleges Stiefel tortiously interfered with the License Agreement,[3] a tort whose elements include: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages." *Freed v. JPMorgan Chase Bank, N.A.*, No. 12 C 1477, 2012 WL 6193964, at *5 (N.D. Ill. Dec. 12, 2012) (quoting *Echo, Inc. v. Timberland Machines & Irrigation, Inc.*, 661 F.3d 959, 968 (7th Cir. 2011)).

Lewis asserts Plaintiff "has not alleged any facts to show that Lewis agreed with the other Defendants to tortiously interfere with the License Agreement. (Def.'s Mem. at 12.) However, Plaintiff need not plead an agreement with specificity; rather, "it is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *M & R Printing Equip., Inc. v. Anatol Equip. Mfg. Co.*, 321 F. Supp. 2d 949, 952 (N.D. Ill. 2004) (quoting *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003)). Here, it is sufficient that Plaintiff alleged Lewis, in controlling J&J, conspired with Stiefel to transfer the licensing rights to Stiefel in order to avoid paying royalties

---

[3] Count VII claims tortious interference with a contract against Stiefel. The allegations set forth in Count VII are incorporated by reference in Count VIII. (Compl. ¶ 163.)

to Plaintiff. On the face of the Complaint, Plaintiff sufficiently pled the parties to, general purpose of, and approximate date of an agreement between Lewis, Stiefel, and J&J.

As to a tortious act in furtherance of the agreement, Plaintiff claims Stiefel tortiously interfered with the License Agreement to cause J&J to breach the License Agreement. Based on the elements of the claim, Plaintiff provides enough facts to raise a reasonable inference of an actionable tortious interference with the License Agreement: the existence of the License Agreement; Lewis's and Stiefel's awareness of the License Agreement; the intentional and unjustified inducement of J&J's breach of the License Agreement; subsequent breaches of the License Agreement by J&J, and consequent damages to Plaintiff. (Compl. ¶¶ 155-70.)

Lewis's Motion to Dismiss is denied as to Count VIII of the Complaint for conspiracy to tortiously interfere with a contract.

## CONCLUSION

Lewis's Motion to Dismiss is denied in part and granted in part. For the foregoing reasons, Plaintiff has stated claims for alter ego liability based on breach of contract, conversion, breach of fiduciary duty, and conspiracy to tortiously interfere with a contract (Counts II, V, VI, and VIII, respectively). Therefore, as to those Counts, Lewis's Motion to Dismiss is denied. Plaintiff has failed to state a claim for unjust enrichment (Count IV), and that claim is dismissed without prejudice and with leave to amend within thirty days of the issuance of this Memorandum Opinion and Order, provided Plaintiff can do so under Fed. R. Civ. P. 11(b).

Date: August 22, 2013

JOHN W. DARRAH
United States District Court Judge